**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| Robert Earl Council AKA Kinetik Justice, | |
| Plaintiff, | |
| v. | Case No. |
| John Hamm, Commissioner of the Alabama Department of Corrections; Jefferson Dunn, former Commissioner; Cheryl Price, Institutional Coordinator; Edward Ellington, Institutional Coordinator; Deborah Toney, Warden of Limestone; William Streeter, Warden of Limestone; Chadwick Crabtree, Warden of Limestone; Capt. Shannon Caldwell; Lt. Jeremy Pelzer; Officer Dustin Brewer; Lt. Sean Bright, Officer Demetrius Charley; Officer Shamarion Dozier; Lt. Hanser Whitfield; Lt. Mike Jones; and Lt. Everett Gilbert, | **COMPLAINT FOR DAMAGES**<br><br>JURY TRIAL DEMANDED |
| in their individual capacities, | |
| Defendants. | |

## COMPLAINT FOR DAMAGES

i

## TABLE OF CONTENTS

COMPLAINT FOR DAMAGES ........................................................................................ 1

INTRODUCTION ........................................................................................................... 1

JURISDICTION AND VENUE ........................................................................................ 2

JURY DEMAND ............................................................................................................ 2

PARTIES ..................................................................................................................... 2

CONDITIONS PRECEDENT ......................................................................................... 6

FACTS ........................................................................................................................ 6

A.   ADOC officials have used Limestone, given its remote location and dangerous
     conditions of confinement, to retaliate against Plaintiff Council and other
     incarcerated activists. ........................................................................................ 6

B.   Plaintiff Council faced retaliation since the moment he arrived back at Limestone
     on December 17, 2021. ....................................................................................... 9

C.   January 2022, Plaintiff Council faces baseless disciplinary charges and is placed
     back in solitary confinement. ............................................................................. 12

D.   September 2022, Plaintiff Council again faced false disciplinary charges and was
     placed back in solitary confinement. .................................................................. 13

E.   October-December 2022, Defendants Lt. Jones and Officer Brewer entered Plaintiff
     Council's cell numerous, assaulted, and harassed Plaintiff Council. ..................... 17

F.   June-September 2023, escalating threats of violence and Lt. Pelzer's attempts to use
     inmates to murder Plaintiff Council. ................................................................... 18

COUNT I – First Amendment Retaliation ...................................................................... 21

COUNT II – Eighth Amendment Deliberate Indifference to Violence ............................. 22

by Correctional Officers and Inmates Acting at Their Behest ......................................... 22

COUNT III – Eighth Amendment Malicious Assaults by Officers ................................... 23

DAMAGES ................................................................................................................ 24

**COMPLAINT FOR DAMAGES**

Plaintiff Robert Earl Council aka Kinetik Justice is entitled to relief for the retaliation and violence inflicted on Plaintiff Council while incarcerated by the Alabama Department of Corrections ("ADOC") at Limestone Correctional Facility ("Limestone"). Plaintiff Council alleges as follows:

**INTRODUCTION**

1.      Since 2014, when Plaintiff Council started the Free Alabama Movement (FAM), which has been defined by peaceful speech and resistance to unconstitutional confinement, conditions and forced labor, the ADOC has responded with every sort of retaliation and cruelty, including one near-successful attempt to kill him.

2.      Limestone is uniquely unsafe for Plaintiff Council because officials have engaged in tit-for-tat retaliation for Plaintiff Council's sustained efforts to shed light on corruption at the facility. The source of their animosity is well-documented. Among other actions, in 2019 Plaintiff Council went public about a corrupt gambling ring run by correctional officers, including Lt. Jeremy Pelzer. That same year, Plaintiff Council helped a prisoner sue Lt. Pelzer after Lt. Pelzer pepper sprayed the prisoner and slammed him to the ground.

3.      Plaintiff Council was temporarily transferred away from Limestone in 2020, after which he filed lawsuits against Limestone administration and officers for retaliating against him while he was still at Limestone. In December 2021, ADOC responded to his lawsuit and continued organizing by transferring him back to Limestone, into the cross-hairs of Lt. Jeremy Pelzer.

4.      Lt. Pelzer, with Warden Streeter's approval, has put a giant target on Plaintiff Council's back: He has promised gang members protection if they killed or assaulted Plaintiff Council—following the same method of retribution Lt. Pelzer has used before. And he has sowed

1

discord to motivate the gang members to assault Plaintiff Council: Lt. Pelzer has, on more than one occasion, used baseless accusations against Plaintiff Council to justify individual and collective punishment of other prisoners—telling them that Plaintiff Council was to blame. Though Plaintiff Council has rang the alarm bells at every opportunity and in every way that he could, Defendants have refused to protect him.

5.      Instead, Defendants have intentionally blocked his transfer away from Limestone, have subjected him to a substantial risk of being assaulted or murdered, have repeatedly sanctioned false disciplinary charges to put him in solitary confinement, have threatened and harassed Plaintiff Council, and have failed to discipline any of the officers involved.

6.      ADOC officials have repeatedly cautioned incarcerated laborers that a refusal to work will be met with the same punishment meted out to Mr. Council. It's known as the "Robert Earl Rule."

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction pursuant to 28 U.S.C. §1331 and 1343 because this action arises under the Constitution and laws of the United States.

8.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## JURY DEMAND

9.      Plaintiff demands a trial by jury on all issues and claims set forth in this Complaint pursuant to the Seventh Amendment of the U.S. Constitution and Federal Rule of Civil Procedure 38(b).

## PARTIES

10.      **Plaintiff Robert Earl Council** AKA Kinetik Justice is an incarcerated organizer and activist. Plaintiff Council and another individual incarcerated by ADOC founded and organized the Free Alabama Movement. FAM resists and educates others within ADOC to resist

2

Defendants' unconstitutional conditions and unlawful forced labor demands. Among other actions, Plaintiff Council helps incarcerated individuals access legal resources and exposes unconstitutional ADOC practices to the media. In response, Plaintiff Council has been subject to long stretches of solitary confinement and has been the victims of physical beatings, strip searches, exposure to chemical agents, harassment, and psychological abuse at the hands of ADOC officials while in solitary confinement.

11.     **Defendant Jefferson Dunn** was Commissioner of ADOC from April 1, 2015 until December 2021. The Commissioner of the ADOC is responsible for heading the AODC, for the independent direction, supervision and control of ADOC. At all relevant times Defendant Dunn acted under color of state law. Defendant Dunn is named in his individual capacity. Upon information and belief, Defendant Commissioner Dunn is a resident of Alabama.

12.     **Defendant Commissioner John Hamm** is the current Commissioner of ADOC since January 1, 2022 to the present. The Commissioner of the ADOC is responsible for ADOC, for the independent direction, supervision and control of ADOC. At all relevant times Defendant Hamm acted under of color of state law. Defendant Hamm is named in his individual capacity. Upon information and belief, Defendant Hamm is a resident of Alabama.

13.     **Defendant Cheryl Price** was Institutional Coordinator for ADOC until approximately 2022. Defendant Price was responsible for planning, monitoring, and reviewing the day-to-day operations of correctional institutions in her assigned area. Her duties included supervising the wardens of the prisons in her areas, ensuring effective and safe daily operations at the facilities and leading the external security audit team. Defendant Price was also responsible for serving as the liaison between wardens and the ADOC executive leadership. Defendant Price is a resident of Alabama.

3

14.     **Defendant Edward Ellington** is the Correctional Institutional Coordinator responsible for the ADOC's Northern Region, which includes Limestone. As Institutional Coordinator, Defendant Ellington is responsible for supervising the wardens at Limestone, ensuring the safety and security of incarcerated people within his region, and supervising and creating policies and procedures that govern the institutions he oversees, including Limestone. Upon information and belief, Defendant Ellington is notified of each instance of use of force by officers. At all relevant times, Defendant Ellington has acted under color of state law. Defendant Ellington is sued in his individual capacity.

15.     **Defendant Deborah Toney** was a Warden of Limestone until March 2022. As warden, Defendant Toney was responsible for the daily functioning and administration of Limestone, including the safe, secure, and humane treatment of all prisoners incarcerated there. At all relevant times Defendant Toney acted under color of state law. Defendant Toney is a resident of Alabama.

16.     **Defendant William Streeter** is a Warden of Limestone since at least 2021 to the present. As warden, Defendant Streeter was responsible for the daily functioning and administration of Limestone, including the safe, secure, and humane treatment of all prisoners incarcerated there. At all relevant times Defendant Streeter acted under color of state law. Upon information and belief, Defendant Streeter is a resident of Alabama.

17.     **Defendant Chadwhick Crabtree** is a Warden of Limestone since approximately March 2022 to the present. As warden, Defendant Crabtree is responsible for the daily functioning and administration of Limestone, including the safe, secure, and humane treatment of all prisoners incarcerated there. At all relevant times Defendant Crabtree acted under color of state law. Upon information and belief, Defendant Crabtree is a resident of Alabama.

4

18.     **Defendant Shannon Caldwell** is a Captain employed at Limestone. At all times relevant to the events at issue in this case, Defendant Caldwell acted under color of state law. Upon information and belief, Capt. Caldwell is a resident of Alabama.

19.     **Defendant Lt. Jeremy Pelzer** is a Lieutenant employed at Limestone. At all times relevant to the events at issue in this case, Defendant Lt. Pelzer was serving in the capacity of a Lieutenant and as such, he was acting under the color of law. Upon information and belief Defendant Lt. Pelzer is a resident of Alabama.

20.     **Defendant Officer Dustin Brewer** is a Correctional Officer employed at Limestone. At all times relevant to the events at issue in this case, Defendant Officer Brewer was serving in the capacity of a Correctional Officer and as such, he was acting under the color of law. Upon information and belief, Defendant Brewer is a resident of Alabama.

21.     **Defendant Lt. Sean Bright** is a Correctional Officer employed at Limestone. At all times relevant to the events at issue in this case, Defendant Officer Bright was serving in the capacity of a Correctional Officer and as such, he was acting under the color of law. Upon information and belief, Defendant Lt. Bright is a resident of Alabama.

22.     **Defendant Officer Demetrius Charley** is a Correctional Officer employed at Limestone. At all times relevant to the events at issue in this case, Defendant Officer Charley was serving in the capacity of a Correctional Officer and as such he was acting under the color of law. Upon information and belief, Defendant Charley is a resident of Alabama.

23.     **Defendant Officer Shamarion Dozier** is a Correctional Officer employed at Limestone. At all times relevant to the events at issue in this case, Defendant Officer Dozier was serving in the capacity of a Correctional Officer and as such he was acting under the color of law. Upon information and belief, Defendant Dozier is a resident of Alabama.

24.     **Defendant Lt. Hanser Whitfield** is a Lieutenant employed at Limestone. At all times relevant to the events at issue in this case, Defendant Lt. Whitfield was serving in the capacity of a Lieutenant and as such he was acting under the color of law. Upon information and belief, Defendant Whitfield is a resident of Alabama.

25.     **Defendant Lt. Mike Jones** is a Lieutenant employed at Limestone. At all times relevant to the events at issue in this case, Defendant Lt. Jones was serving in the capacity of a Correctional Officer and as such he was acting under the color of law. Upon information and belief, Defendant Lt. Jones is a resident of Alabama.

26.     **Defendant Lt. Everett Gilbert** is a Lieutenant employed at Limestone. At all times relevant to the events at issue in this case, Defendant Lt. Gilbert was serving in the capacity of a Lieutenant and as such he was acting under the color of law. Upon information and belief, Defendant Lt. Gilber is a resident of Alabama.

27.     The Defendants are liable jointly, severally, and *in solido* for the acts and omissions set forth in this Complaint and all resulting damages.

## CONDITIONS PRECEDENT

28.     Any and all conditions precedent to this lawsuit have been satisfied or exhausted.

## FACTS

**The retaliatory transfer of Plaintiff Council back to Limestone on December 17, 2021, and continued denial of transfer away from Limestone for the last two years, subjected Plaintiff Council to assaults, death threats, harassment, solitary confinement, and attempted murder by Lt. Pelzer and other correctional officers.**

**A.     ADOC officials have used Limestone, given its remote location and dangerous conditions of confinement, to retaliate against Plaintiff Council and other incarcerated activists.**

29.     On December 17, 2021, Defendant Price ordered Plaintiff Council to be transferred back to Limestone in an effort to retaliate against Plaintiff Council.

30.     Defendants Commissioners Dunn and Hamm, Price, Ellington, and Wardens Toney, Crabtree, and Streeter know and must have known that Plaintiff Council had previously, in 2020, filed lawsuits against many of the officers at Limestone stemming from his 2019 incarceration there, that Limestone was a uniquely dangerous facility for Plaintiff Council, and that Plaintiff Council's attorney had requested a transfer away from Limestone for his protection. These letters, lawsuits, and complaints included:

a.      On January 9, 2020, Plaintiff Council's attorney David Gespass sent a letter to ADOC's Institutional Officer, Cheryl Price, informing her of the situation involving Plaintiff Council and requesting that she intervene and transfer Plaintiff Council away from Limestone.

b.      On January 17, 2020, Plaintiff Council filed a Complaint to Commissioner Jefferson Dunn, outlining the failure of Limestone supervisory officials to investigate the actions of Sgt. Pelzer and Officer Brewer.

c.      On September 28, 2020, Plaintiff Council filed a federal lawsuit against, among other defendants, Jeremy Pelzer, Dustin Brewer, Jefferson Dunn, Deborah Toney and Cheryl Price, alleging that they retaliated against him for filing lawsuits against Sgt. Pelzer and exposing officers' corruption at Limestone in 2019 for violating his First, Eighth, and Fourteenth Amendment rights. *See Council v. Pelzer*, No. 2:20-cv-01439-LSC-JHE (N.D. Ala. Sep. 28, 2020).

d.      On February 21, 2022, Plaintiff Council filed an Admin. Regulation 208 Complaint against ADOC and Limestone supervisory officials for the due process violations he had experienced since arriving at Limestone.

     e.     On April 10, 2023, Plaintiff Council's attorney David Gespass wrote a letter to Commissioner John Hamm, informing him that Officer Brewer had repeatedly entered Plaintiff Council's cell to "shake it down," harassing Plaintiff Council. Also, Officer Brewer twice laid hands and used force on Plaintiff Council on December 2, 2022, and also on November 28, 2022.

31.     Since 2019, ADOC's own internal review boards have recommended that Plaintiff Council be transferred away from Limestone and Defendant Lt. Pelzer for Plaintiff Council's own safety: In 2019, ADOC's review board recommended that Mr. Council be transferred for his safety to another institution further south. In November 2022, both Ms. Hollingsworth and Mr. Duffey recommended that he be transferred to another institution. In addition, both expressed to Plaintiff Council that they would recommend that he be transferred away from Limestone for his safety.

32.     On October 18, 2023, Capt. Denise McKenzie discussed a prison transfer with Plaintiff Council, and Capt. McKenzie "agreed and told [Plaintiff Council] that they had been trying repeatedly to get him transferred and she didn't know what the problem was." She also told Plaintiff Council "she was going up front to see what the holdup was, as they were trying to get [him] transferred," implying that officials above the facility level were responsible for the fact that he was still at Limestone. Indeed, ADOC's transfer division asked Ms. Obenchain if LESD had been notified of the transfer request, invoking FAM co-founder Melvin Ray as a pretextual "enemy" designation to prevent a transfer.

33.     Defendants Commissioners Dunn and Hamm, Price, Ellington, and Wardens Toney, Crabtree, and Streeter know and must have known of the unique threat that Limestone posed to Plaintiff Council, the letters, complaints, and lawsuits filed by him or on his behalf requesting a transfer, and the ongoing efforts to transfer Plaintiff Council away from Limestone.

Defendants Dunn and Hamm receive or receive information about litigation involving the ADOC. Defendants Price, Ellington, Toney, Crabtree, and Streeter receive reports and updates about the security conditions at Limestone and requests to transfer prisoners in the normal course of their duties. Plaintiff Council's 2020 lawsuit was brought against, among other defendants, Jeremy Pelzer, Dustin Brewer, Jefferson Dunn, Deborah Toney and Cheryl Price. Finally, Plaintiff Council's February 21, 2022 Admin. Reg. 208 Complaint was addressed to Limestone administrative Defendants.

34.     ADOC officials have used Limestone, given its remote location and dangerous conditions of confinement, to retaliate against other high-profile incarcerated activists.

35.     ADOC officials engaged in similar retaliation to suppress Juan Caples, another prisoner who organizes with FAM. After a series of retaliatory transfers, they placed him at Limestone in solitary confinement for more than two years (until a demand letter was sent by his attorney in the Fall of 2023), because he allegedly had an enemy in the general population. Ms. Obenchain told him she did not know why he was in solitary confinement for so long but that "the decision was made over her head."

36.     ADOC officials used a transfer to Limestone to retaliate against prisoners in other instances. For example, one work-release worker was forced by ADOC to work within its facilities to break the September 2022 work strike. When this worker sought to honor the strike and declined to work, he was removed from the work-release program, put "behind the wall" at Limestone, a maximum-security facility where he still remains today (more than one year later), and placed in solitary confinement for several months.

**B.     Plaintiff Council faced retaliation since the moment he arrived back at Limestone on December 17, 2021.**

37.     Immediately after Plaintiff Council arrived back at Limestone on December 17, 2021, Defendant Lt. Bright and other Limestone officers placed him in "Statewide lock-up" i.e., solitary confinement. Defendant Lt. Bright called Plaintiff Council's name, saying "front and center," and told him that, as a Christmas present, Plaintiff Council was being placed in "Statewide lock-up" in cell D-19. Plaintiff Council was transferred from Kilby to Limestone as a Medium 9 custody level, meaning that he was eligible to be housed in general population and there was no justification for placing him in Statewide lock-up.

38.     When Plaintiff Council stepped off the bus, upon his arrival at Limestone on December 17, 2021, Defendant Lt. Bright and Plaintiff Council had a verbal altercation and Plaintiff Council used an expletive when speaking to Defendant Lt. Bright.

39.     Defendant Lt. Bright housed Plaintiff Council in cell D-19, a cell covered with pepper spray and gas chemicals because its previous occupant had been pepper sprayed earlier that same day. Defendant Lt. Bright did not provide Plaintiff Council with water or other material to decontaminate the cell, leaving Plaintiff Council to suffer in a small cell filled with chemical spray, with minimal or no ventilation, and with no way of alleviating the burning from the chemical spray. Plaintiff Council remained in the cell until January 7, 2022.

40.     On December 17, 2021, Defendant Capt. Caldwell told Plaintiff Council that the Limestone administrators and officers had ordered him placed in Statewide lock-up beginning the moment that he arrived there. He also told him that he had been transferred from Kilby to Limestone because Defendant Price in the ADOC's central office had issued a directive ordering Plaintiff Council to be transferred to Limestone.

41.     As described above, Defendant Price's decision to transfer Plaintiff Council to Limestone was an effort to retaliate against Plaintiff Council because Defendant Price knew that

transferring Plaintiff Council back to Limestone exposed him to a serious and urgent risk to his safety from officers he had previously filed lawsuits against.

42.     Plaintiff Council eventually learned, in  December 28, 2021 conversation with Limestone classification specialists Ricky Smith and Duffey, that he was being housed in Statewide Lockup because the Limestone administration, including Defendants Wardens Toney and Streeter, Defendant  Capt. Caldwell, Capt. McKenzie, the head of mental health, the head of classifications, and the shift supervisors, met and decided that they did not want Plaintiff Council housed in general population even though his custody level allows for general population. The Limestone administration agreed that they wanted Plaintiff Council to be placed in Statewide lock up with no disciplinaries to justify placing him there. In other words, Limestone correctional officers were instructed to do whatever they could to get Plaintiff Council placed in "closed custody," meaning in solitary confinement.

43.     On December 20, 2021, Defendants Officer Charley and Dozier came into Plaintiff Council's cell and shook him down and found one Newport cigarette that was given to him by another officer.

44.     On December 22, 2021, Defendant Officer Brewer came into Plaintiff Council's cell and served a disciplinary for contraband at approximately 3:00 a.m.

45.     Plaintiff Council informed his mental health counselor that he was not supposed to be in segregation based on his custody level and told them about Defendant Officer Brewer coming into his cell. Plaintiff Council told them that he feared for his life and it was causing him to have anxiety and be depressed.

46.     On December 27, 2021, Plaintiff Council was served with a disciplinary for insubordination for cursing at Defendant Lt. Bright on December 17, 2021.

**C.    January 2022, Plaintiff Council faces baseless disciplinary charges and is placed back in solitary confinement.**

47.    On January 7, 2022, Plaintiff Council was released from solitary confinement to general population. Defendant Capt. Caldwell informed Plaintiff Council that the December 27, 2021 disciplinary for insubordination, cursing at Defendant Lt. Bright, was voided.

48.    On January 14, 2022, Officer Kenneth Noe served Plaintiff Council the exact same disciplinary for insubordination towards Defendant Lr. Bright from December 27, 2021, saying that it had been reinstated.

49.    On January 28, 2022, Plaintiff Council was called for a disciplinary hearing. Defendants Lt. Whitfield, the hearing officer, and Lt. Bright, the arresting officer, were there. Defendant Lt. Whitfield found Plaintiff Council guilty of demonstrating insubordination towards an officer despite Plaintiff's objection that the disciplinary charge was voided and therefore failed to comply with ADOC's Administrative Regulations.

50.    ADOC Admin. Reg. 403, Sect. V.A.7 only affords ten working days for disciplinary hearing on a charge. Delaying the disciplinary hearing from December 27, 2021 to January 28, 2022 clearly exceeded the ten working days; there was no applicable exception under ADOC regulations that would have permitted the disciplinary to be reinstated.

51.    On January 28, 2022, Officers Whalen and Scott took Plaintiff Council and placed him back in segregation, though they did not know why. Plaintiff Council was placed into segregation without a detention notification as required by ADOC administrative regulations. Plaintiff Council was placed in administrative segregation block (C).

52.    Three days later, on January 31, 2022, Defendant Warden Streeter approved the previously voided disciplinary.

12

53.    On January 31, 2022, Plaintiff Council's mother, Ernestine Council, called Limestone prison and spoke to Defendant Capt. Caldwell. Defendant Capt. Caldwell told Ms. Council that Plaintiff Council was being returned to segregation (1) because Montgomery had called and ordered that Plaintiff Council be placed in lock-up for speaking to journalist Keri Blakinger over a phone call and (2) the reinstated December 27, 2021 disciplinary for allegedly cursing at an officer.

54.    On February 10, 2022, ADOC's media office clarified to journalist Keri Blakinger that ADOC regulations permitted prisoners to communicate with media over the phone and denied that any prisoner had been disciplined or retaliated against for speaking to a journalist. The ADOC representative stated that claims that a "prisoner had been placed in solitary for making calls to the media are false."

55.    On February 10, 2022, thirteen days after being placed in segregation, Plaintiff Council received a detention notification informing Plaintiff Council that he was placed in segregation pending an LESD investigation into why so many people had called the prison to ask why Plaintiff Council had been placed in segregation. This notification was contrary to the two reasons given by Captain Caldwell on January 31, 2022.

56.    On February 21, 2022, Plaintiff Council filed an Admin. Regulation 208 Complaint against ADOC and Limestone supervisory officials alleging retaliation.

**D.    September 2022, Plaintiff Council again faced false disciplinary charges and was placed back in solitary confinement.**

57.    On September 26, 2022, at Limestone, prisoners at all thirteen (13) major ADOC prison facilities went on strike, withholding their labor from food service and janitorial jobs and demanding improvement to conditions. Wardens and correctional officers retaliated against

prisoners by, among other means, denying food to prisoners and limiting them to just two meals a day.

58.     On September 28, 2022, Plaintiff Council was placed in segregation for allegedly causing a riot in B dorm.

59.     On September 28, 2022, in B dorm, Limestone administrators sent a group of prisoners to negotiate with Plaintiff Council regarding ending the work strike. Plaintiff Council rejected their offer to call off the strike.

60.     Approximately an hour later, a CERT team and several officers came into B dormitory where Plaintiff Council slept and counted the prisoners. At the end of the count, instead of exiting the dormitory, the CERT team and officers went to Plaintiff Council's cell. Plaintiff Council informed the officers that he had no contraband and submitted to a strip search. He then stepped aside and allowed his cell to be searched. One of the officers told Plaintiff Council that he was being moved to restrictive housing.

61.     Plaintiff Council objected to being placed in restrictive housing, stated that he had broken no rule or ADOC regulation, and asked to see the officers' supervisors. One of the officers then reached for Plaintiff Council's wrist and twisted his arm behind his back, placing him in handcuffs. Officers then dragged him by an arm and a leg across the floor of the prison block, twisting both at awkward angles, threw him on top of a trash cart, and wheeled him into the health care unit at the facility. The health care unit refused to perform a body chart and document Plaintiff Council's injuries.

62.     Defendant Warden Streeter was in B dorm at the time and witnessed this incident.

63.     On September 28, 2022, Plaintiff Council was placed in segregation.

64.     On September 29, 2022, Plaintiff Council informed his mental health specialist that his life was in danger. On September 30, 2022, Plaintiff Council proclaimed that he was beginning a hunger strike.

65.     On October 17, 2022, Defendant Lt. Jones took Plaintiff Council to D dormitory and explained that he was there for a disciplinary hearing relating to several disciplinaries he was charged with because of his actions on September 28, 2022. Defendant Lt. Jones said that no witnesses were present because Plaintiff Council had failed to request witnesses.

66.     Plaintiff Council asked Lt. Jones when he had ever known Plaintiff Council not to request witnesses for his disciplinary hearings. Further, Plaintiff Council said that he had not served the disciplinaries twenty-four hours in advance, and therefore he did not know the charges against him. Defendant Lt. Jones found Plaintiff Council guilty on all of the disciplinaries and walked out.

67.     Among the disciplinaries charges brought against Plaintiff Council were several false disciplinaries written by Defendant Lt. Pelzer. Defendant Lt. Pelzer alleged that on September 28, 2022, in B dorm, Plaintiff Council physically assaulted Officer Simpson. Defendant Lt. Pelzer wrote that Plaintiff Council "incit[ed] other inmates to become aggressive," and that he then "grabbed an officer," Officer Simpson, "causing the officer to fall to the floor."  Defendant Lt. Pelzer also lied when he wrote in a disciplinary dated October 3, 2022, that Plaintiff Council participated in an incident where multiple prisoners gathered around staff to intimidate them.

68.     Defendant Lt. Jeremy Pelzer was not present for any of the incidents described in the disciplinaries.

69.     In the September 28, 2022, incident in B dorm, Plaintiff Council did not touch an officer, no weapon was used, there were no injuries, and he did not demonstrate assaultive behavior towards any officer.

70.     On November 2, 2022, Defendant Warden Streeter affirmed the outcome of the disciplinary hearing despite witnessing the underlying incident in B dorm on September 28, 2022 and knowing that the disciplinaries were false.

71.     Plaintiff Council refused to sign the result from the disciplinary hearing in protest of the fabricated charges against him and also because he had been denied due process.

72.     On November 8, 2022, Plaintiff Council was served with several disciplinary charges and informed that he had a reclassification hearing the next day.

73.     Plaintiff Council had never previously been served any of the disciplinary charges nor allowed to call witnesses. Plaintiff Council was still not permitted to call witnesses for the November 9, 2022 hearing.

74.     On November 9, 2022, Plaintiff Council requested that all witnesses who submitted statements against him be required to answer whether, on September 28, 2022, (1) they observed him become aggressive towards any ADOC officer; and (2) they heard him become violent or incite others towards any ADOC officer.

75.     These questions were never posed to any witnesses.

76.     At the reclassification hearing, Ms. Hollingsworth, a classification specialist and Mr. Duffey, also a classification specialist, both expressed to Plaintiff Council that they believed that the disciplinaries brought against him were a lie.

77.     Both Ms. Hollingsworth and Mr. Duffey recommended that Plaintiff Council be transferred to another institution, away from Limestone, for his safety.

78.     Plaintiff Council told the hearing officer Bryan McPhail that he would not continue to participate in "kangaroo courts," sham disciplinary proceedings premised on false underlying charges. After his experience going through the disciplinary hearing based on the September 28, 2022 charges, Plaintiff Council realized that it was pointless for him to draft questions because they were not posed to witnesses. He also realized that the disciplinary hearings could be based on baseless charges and would be rubber stamped by Defendant Warden Streeter.

**E.     October-December 2022, Defendants Lt. Jones and Officer Brewer entered Plaintiff Council's cell numerous, assaulted, and harassed Plaintiff Council.**

79.     From October through December 2022, Defendant Officer Brewer entered Plaintiff Council's cell numerous times to "shake down" his cell.

80.     On November 28, 2022, Defendants Officer Brewer and Lt. Jones assaulted Plaintiff Council, threw him to the floor, cut his clothes off, and placed him in a suicide cell.

81.     On December 2, 2022, Officer Brewer entered Plaintiff Council's cell at 3:00 a.m. Plaintiff Council asked for the sergeant on duty to come and supervise Defendant Officer Brewer while Defendant Officer Brewer was in Plaintiff Council's cell. In response, Defendant Officer Brewer sprayed Plaintiff Council in the face with pepper spray.

82.     Defendant Officer Brewer asserted that he had been ordered to Plaintiff Council's cell at 3:00 a.m. by Sergeant Adkins. Defendant Officer Brewer attempted to write Plaintiff Council up on disciplinary charges regarding the December 2, 2022 incident.

83.     Defendant Officer Brewer's supervisor, Sgt. Adkins, came to the cell and clarified that he did not send Defendant Officer Brewer to Plaintiff Council's cell. Sgt. Adkins refused to sign off on or support any disciplinary charges against Plaintiff Council stemming from the incident.

**F.     June-September 2023, escalating threats of violence and Lt. Pelzer's attempts to use inmates to murder Plaintiff Council.**

84.     During the summer of 2023, Plaintiff Council faced escalating threats of violence from Limestone correctional officers.

85.     On Sunday, June 18, 2023, a video was shot at Limestone prison showing men playing basketball. Plaintiff Council appeared in a frame of the video. Plaintiff Council was not involved in either producing the video or posting the video.

86.     Shortly after, Defendant Lt. Pelzer told prisoners that "Robert Council posted a live [referring to live stream] and that's why y'all can't catch store."

87.     Defendant Lt. Pelzer denied "store" or commissary to an entire housing dormitory and identified Plaintiff Council as the reason the entire population was being denied commissary.

88.     "Catch store" refers to a prisoner's ability to purchase items from commissary; taking commissary privileges away from prisoners is often used as a form of punishment.

89.     Defendant Lt. Pelzer's statement was dangerous in a prison environment like Limestone because it placed a target on Plaintiff Council.

90.     This type of collective punishment had never been done before. If a person was robbed or stabbed at Limestone, officers did not take away the entire building's ability to catch store. This was an attempt by Lt. Pelzer to manipulate other people's anger and to incentivize them to act on their anger, target Plaintiff Council, and kill or injure Plaintiff Council.

91.     On June 20, 2023, Defendant Officer Charley at Limestone stated to Plaintiff Council, "What you looking at? That's why you lost a [sic] eye at West Jefferson." This comment referred to his January 30, 2021 assault at Donaldson.

92.     Plaintiff Council previously encountered Officer Defendant Charley on December 20, 2021 when Defendant Officer Charley entered Plaintiff Council's and attempted to write up

18

Plaintiff Council for possessing a contraband Newport cigarette that another correctional officer gave to Plaintiff Council.

93.     On June 23, 2023, there was a commotion on Plaintiff Council's housing tier and officers were present. Plaintiff Council stepped out of his cell and viewed an officer continuing to use force and beat another man on the ground. Defendant Lt. Gilbert and Officer Collins observed this from about three feet away. Plaintiff Council told Defendant Lt. Gilbert and Officer Collins that they needed to stop the officer from continuing to use force. Defendant Lt. Gilbert and Officer Collins said "you don't know what's going on."  Plaintiff Council told them that he saw the man was already on the ground and that therefore he had seen enough, the use of force needed to stop.

94.     At that point, rather than stop the violence, Defendant Lt. Gilbert stated, "Fuck that shit. I'm gone start sending their ass out the back gate," referring to killing prisoners.

95.     A week later, another prisoner told Plaintiff Council that he had just seen Defendant Lt. Gilbert. This prisoner said that Defendant Lt. Gilbert referred to Plaintiff Council while gritting his teeth, "I can't wait to catch his ass. Everybody be following him like he somebody."

96.     At that point, Plaintiff Council added Defendant Lt. Gilbert to the list of officers that he needs to be aware of, including officers Brewer, Pelzer, Charley, Gilbert, and Lt. Alyssa Chancer ("AJ"). These are officers, based on their acts of physical violence against Plaintiff Council, their threats to him, or through other actions, that Plaintiff Council makes sure are not behind him or around him when a riot or assault breaks out at the prison. These are officers that Plaintiff Council does not expect to follow the rules or uphold the law.

97.     In late May and early June 2023, several prisoners, including prisoners known by their prison names as Dew Drop and Lil C, informed Plaintiff Council that Defendant Lt. Pelzer wants him dead. These prisoners told Plaintiff Council that Defendant Lt. Pelzer gave them a pass

and said none of them would get in trouble for killing Plaintiff Council. These comments placed Plaintiff Council in fear for his life.

98.     Previously, on September 30 2022, Defendant Lt. Pelzer held a meeting between several gang members and Plaintiff Council. These gang members included Little Lewis, a gang member from Montgomery with a lot of respect there, Snake G, and Rob Lowe.

99.     Defendant Lt. Pelzer negotiated with these gang members and asked their members not to support the ongoing work strike in protest of the prison conditions. Little Lewis said that his members were engaged in a collective work strike and sided with the work strike.

100.    Defendant Lt. Pelzer was angered that those three prisoners supported the work strike. In response, that same day he ordered all three prisoners placed in solitary lock-up.

101.    Other Crips gang members continued to ask Defendant Lt. Pelzer about releasing Little Lewis from lock-up and solitary confinement. Defendant Lt. Pelzer said he could not believe these prisoners were choosing to support the work strike and Plaintiff Council, that was why he was keeping Little Lewis in solitary.

102.    In late May and early June 2023, Defendant Lt. Pelzer told prisoners that he wanted Plaintiff Council dead.

103.    On September 10, 2023, another prisoner was stabbed multiple times and robbed by prisoners working as runners for Defendant Lt. Pelzer. After reviewing the video tape, Defendant Lt. Pelzer used his authority and locked up the victim rather than the assailants.

104.    Between July and August of 2023, Plaintiff Council referred incidents of Limestone correctional officers physically assaulting and using excessive force against prisoners to civil rights attorneys for litigation. These incidents included:

    a.      Marquez Vaughn - Vaughn was beaten by Sgt. Jacobs, Anderson, and
            Officer Green;

b.      Yinessa Banks- Banks was beaten by Sgt. Jacobs, Lt. Pelzer, and Officer Clemons.

c.      Patrick Wooden- Wooden was beaten by Sgt. Jacobs and Officer Waed.

d.      Andrew Clark- Clark was beaten by Lt. Chandler, Sgt. Parker, and Officer Collins.

e.      Anthony Jackson- Jackson was beaten by Officer Owens, Sgt. Morrison.

105.    Limestone correctional officers, including Defendants Warden Streeter and Lt. Pelzer, became alarmed by the increasing number of attorney visits and legal phone calls being scheduled with those five prisoners. These officers began to fear that Plaintiff Council was orchestrating a legal campaign to hold them accountable and that they could be referred to criminal prosecution.

106.    Defendant Lt. Pelzer and other Limestone officers knew that Plaintiff Council had assisted prisoners in filing lawsuits against them in the past.

107.    To date, no correctional officer has been disciplined for these five prisoner assaults. For example, no investigator has asked Anthony Jackson to provide a statement, despite his attorney writing to Defendants Crabtree and Streeter regarding Anthony Jackson's assault and alerting them that there appeared to be a pattern and practice of correctional officers at Limestone engaging in excessive force. And Defendant Lt. Pelzer has not been disciplined despite beating Mr. Banks in view of dozens of witnesses.

**COUNT I – First Amendment Retaliation**

108.    In violation of the First Amendment, Defendants Commissioner Dunn, Commissioner Hamm, Institutional Coordinator Price, Institutional Coordinator Edward Ellington, Warden Toney, Warden Streeter, Warden Crabtree, Capt. Caldwell, and Lt. Pelzer, are liable under 42 U.S.C. § 1983 for retaliating against Plaintiff Council with a pattern and practice of all types of abuse, harassment, and unsafe conditions of confinement detailed above, including:

(a) a campaign of correctional officers assaulting Plaintiff Council and conducting intimidating cell entries ¶¶ 44, 45, 62, 81-84 (b) threatening Plaintiff Council or attempting to have him murdered by other inmates ¶¶ 85-104 (c) transferring Plaintiff Council back to Limestone on December 17, 2021, and, for the last two years, denying him a transfer away from Limestone to protect his safety, ¶¶ 30-36, 41-42 (d) placing him in solitary confinement three times on fabricated grounds and without due process for approximately nine months between December 2021, and September 2023. ¶¶ 38-47, 48-57, 58-79.

109.    Defendants' resistance, at the highest levels, to transferring Plaintiff Council away from Lt. Pelzer—despite ADOC's own internal recommendations and documentation of the need to transfer Plaintiff Council away from retaliatory violence at Limestone, despite Plaintiff Council's protected lawsuits, grievances, and complaints to the media ¶ 30—can only be explained by retaliatory animus or ADOC's fear of what else Plaintiff Council would expose of their criminal and unconstitutional mistreatment of prisoners if he were freed from the retaliatory violence and abuse at Limestone.

110.    The following Defendants violated the First Amendment's prohibition on retaliation due to their conduct detailed above: Officer Brewer ¶¶ 45, 80-84, Lt. Bright, ¶¶ 39-40, Officer Charley ¶¶ 44, 92, Officer Dozier, ¶ 44, Lt. Whitfield ¶ 50, Lt. Jones ¶¶ 66-67, Lt. Gilbert ¶¶ 94-96.

111.    The retaliation against Plaintiff Council by Defendants reflects malice and a reckless and callous indifference to his clearly established rights under the First Amendment, rendering Defendants liable for punitive damages under 42 U.S.C. § 1983.

**COUNT II – Eighth Amendment Deliberate Indifference to Violence
by Correctional Officers and Inmates Acting at Their Behest**

112.   In violation of the Eighth Amendment, Defendants Commissioner Dunn, Commissioner Hamm, Institutional Coordinator Price, Institutional Coordinator Ellington, Warden Toney, Warden Streeter, Warden Crabtree, Capt. Caldwell, and Lt. Pelzer are each liable under 42 U.S.C. § 1983 for his or her deliberate indifference to Plaintiff Council's life-threatening conditions of confinement at Limestone from December 17, 2021, through September 2023, that exposed Plaintiff Council to (a) assaults by officers and terrorizing cell entries ¶¶ 44, 45, 62, 81-84 and (b) threats to kill Plaintiff Council or attempts to incentivize other prisoners to kill him ¶¶ 85-104.

113.   Defendants have been on notice of these assaults, intimidation, threats, and attempts to kill Plaintiff Council. ¶ 31.

114.   Defendants each failed to take any corrective measures within their authority to protect Plaintiff Council, including failing to transfer him away from Limestone and failing to discipline, terminate, or initiate the arrest of Lt. Pelzer or any of the officers who have assaulted, threatened, and attempted to murder Plaintiff Council.

115.   Defendants' denial of protection to Plaintiff Council reflects their malice and reckless and callous indifference to Plaintiff's clearly established rights under the Eighth Amendment, rendering Defendants liable for punitive damages under 42 U.S.C. § 1983.

**COUNT III – Eighth Amendment Malicious Assaults by Officers**

116.   In violation of the Eighth Amendment, Defendants Officer Brewer and Lt. Jones are each liable under 42 U.S.C. § 1983 for maliciously assaulting Plaintiff Council or participating in an assault on Plaintiff Council on November 28, 2022, (Officers Brewer and Lt. Jones) December 2, 2022 (Officer Brewer). ¶¶ 79-83.

117.    On September 28, 2022, Plaintiff was assaulted in violation of the Eighth Amendment by a CERT team, whose members have not yet been added as Defendants.

118.    The assaults by Defendants were exerted with malice and a reckless and callous indifference to Plaintiffs' clearly established rights under the Eighth Amendment, rendering the Defendants liable for punitive damages under 42 U.S.C. § 1983.

## DAMAGES

119.    The Defendants' tortious conduct, as alleged herein above, was a direct, proximate, and producing cause of the violation of Plaintiff Council's rights under the U.S. Constitution and under Alabama law, and of the following damages:

   a.  damages resulting from all harm suffered by Plaintiff Council, including but not limited to:

      i.   conscious physical pain and suffering;

      ii.  physical injury and impairment;

      iii. mental anguish and anxiety;

      iv.  loss of liberty;

   b.  punitive damages;

   c.  nominal damages;

   d.  any and all other damages, which will be more fully proven at trial, including for the intangible but concrete harms proximately caused by the violations of Plaintiff Council's First and Eighth Amendment rights;

   e.  all other forms of relief provided by law together with interest from the date of injury until paid, plus costs of these proceedings.

120.    Plaintiff is entitled to attorneys' fees under 42 U.S.C. § 1988, prejudgment interest, and costs.

24

121.    All defendants are liable jointly, severally, and *in solido* as a result of their participation in the conduct giving rise to these allegations.

WHEREFORE, the Plaintiff prays that after due proceedings in this Court, judgment be entered in favor of Plaintiff and against Defendants, jointly, severally, and *in solido*, for all such damages as are reasonable under the premises set forth herein, together with legal interest thereon from the date of judicial demand until paid; for all costs of this proceeding, as well as penalties and attorneys' fees to the extent applicable; and for all other relief to which Plaintiff may be entitled.

Respectfully submitted this 18th day of December, 2023.

/s/ *Andrew Menefee*
Andrew Menefee
**MENEFEE LAW**
Alabama Bar No. 1529W23S
1250 Connecticut Ave NW
Ste. 700
Washington D.C., 20036
202-381-0143
amenefee@menefee-law.com
*Attorney for Plaintiff*

25